```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JEFFREY L. LEVIN, Individually and on            :
Behalf of all Others Similarly Situated,         :
                    Plaintiffs,                  :       **OPINION AND ORDER**
                                                 :
v.                                               :       16 CV 3627 (VB)
                                                 :
THE COUNTY OF WESTCHESTER and                    :
WESTCHESTER COUNTY WATER                         :
DISTRICT NO. 1,                                  :
                    Defendants.                  :
--------------------------------------------------------------x
```

Briccetti, J.:

  Plaintiff Jeffrey L. Levin brings this putative class action against defendants The County of Westchester ("County") and Westchester County Water District No. 1 ("District"), alleging violations of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300 et seq. Plaintiff also alleges a claim under Section 349 of the New York General Business Law for deceptive and fraudulent business practices, as well as state law contract and negligence claims.

  Before the Court is defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6). (Doc. #26).

  For the reasons set forth below, the motion is GRANTED.

  The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

  The following factual background is drawn from "the facts alleged in the [amended] complaint, documents attached to the [amended] complaint as exhibits, and documents incorporated by reference in the [amended] complaint." See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). For purposes of deciding the pending motion, the Court

1

accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor.

The District operates the Kensico-Bronx ("KB") Pipeline, which runs from the Kensico Reservoir at its northern end to the Bronx at its southern end.

The KB Pipeline carries water from two sources: the Kensico Reservoir and Shaft 22 of the Delaware Aqueduct ("Shaft 22"). The Kensico Reservoir is an unfiltered water source that is open to the atmosphere and subject to surface runoff. The Kensico Reservoir supplies the northern KB Pipeline by gravity flow. Shaft 22 supplies the southern portion. Both the Kensico Reservoir and Shaft 22 are owned by the City of New York.

The District transmits water from these sources via the KB Pipeline to the water systems of the cities of White Plains, Yonkers, and Mount Vernon, and the Village of Scarsdale (the "Member Municipalities"), which in turn distribute water to consumers within those systems.

The SDWA requires public water systems to take various steps to protect the public water supply from contamination by pollutants. These steps include protecting the source water, treating the water, monitoring water-quality, and providing information to the public.

Cryptosporidium is a microbial pathogen that causes cryptosporidiosis, a gastrointestinal illness in humans that, in turn, causes symptoms including diarrhea, nausea, and abdominal cramps. Cryptosporidium is most often spread through drinking and recreational water.

On January 5, 2006, the United States Environmental Protection Agency ("EPA") enacted the Long Term 2 Enhanced Surface Water Treatment Rule ("LT2"). See 40 C.F.R. Part 141, Subpart W. One purpose of LT2 is to supplement the SDWA and existing federal regulations by requiring public water systems that use an unfiltered surface-water source to implement specified water-treatment protocols to prevent Cryptosporidium contamination.

On August 6, 2013, the United States, on behalf of the EPA, commenced a civil action against the County, alleging the District is a public water system subject to LT2, and that the County had failed to comply with the requirements of LT2 by April 1, 2012—the compliance date applicable to the District. See United States v. County of Westchester, 13 Civ. 5475 (NSR) (S.D.N.Y. 2013) (the "EPA Action"). Following the denial of motions to dismiss filed by the County and for summary judgment filed by the United States, and the completion of discovery, the United States and the County entered into a consent decree, which was approved and entered by the court on September 2, 2015. (Adin Decl. Ex. A).

The consent decree requires the County to construct two local ultra-violet ("UV") treatment facilities by March 15, 2018 (Adin Decl. Ex A ¶ 21); pay a civil penalty (Id. ¶ 16); fund certain "supplemental environmental projects" (Id. ¶ 26); and perform various interim measures until the two local UV treatment facilities are operational (Id. ¶ 20).

The interim measures required by the consent decree include:

(i) Provision of Compliant Water to Scarsdale and Yonkers.[1] From October 1 through April 30 of any calendar year, the District shall backfeed water drawn from Shaft 22 to the Crisfield Pumping Station, located in the City of Yonkers.[2] From November 1 through March 31 of any calendar year, the District shall backfeed water drawn from Shaft 22 to the Reeves-Newsom Pumping Station, located in the Village of Scarsdale.[3] During these periods of time, all drinking water provided by the District to these municipalities is compliant with LT2. (Adin Decl. Ex A ¶ 20(a)).

---

[1] The New York City Department of Environmental Protection has completed construction of the Catskill-Delaware Water UV Disinfection Facility, which provides UV disinfection of water that is compliant with LT2. This LT2 compliant water is provided to connections in the southern portion of the District, including the City of Mount Vernon.

[2] Other than Crisfield, all of the City of Yonkers's connections to the KB Pipeline are south of Shaft 22, and therefore receive LT2 compliant water year-round.

[3] The Reeves-Newsom Pumping Station is the Village of Scarsdale's only connection to the KB Pipeline.

(ii) <u>Provision of Compliant Water to White Plains</u>. The first of the two local UV treatment facilities is required to be operational by May 15, 2017. (Adin Decl. Ex A ¶ 21(j)). Once that facility is operational, approximately 90% of the drinking water provided to the City of White Plains will be treated by that facility. (<u>Id</u>.).

(iii) <u>Public Notice</u>. During the consent decree, the District will provide public notice to the Member Municipalities for any quarter in which a given Member Municipality will receive water from the District that is not LT2 compliant. This quarterly notice is also posted on the County's website. (Adin Decl. Ex A ¶ 20(b)).

(iv) <u>Monitoring and Action Plan</u>. Until the local UV treatment facilities are fully operational, the District will conduct weekly source water monitoring for Cryptosporidium, and place into effect a Cryptosporidium action plan that was agreed upon by the County and the United States. The results of the weekly testing are posted on the County's website. (Adin Decl. Ex A ¶ 20(b)).

**DISCUSSION**

I. <u>Rule 12(b)(6) Standard</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. <u>Id</u>. at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." <u>Id</u>. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>,

4

556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Courts may also consider matters of which judicial notice may be taken, including public documents and records. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills, 815 F. Supp.2d 679, 691 (S.D.N.Y. 2011).

II. SDWA Claim

Plaintiff seeks permanent injunctive relief compelling defendants to bring the District into compliance with the SDWA and LT2. Defendants argue plaintiff lacks standing under the SDWA because the United States is already diligently prosecuting an action against defendants to require compliance under the SDWA and LT2 in the EPA Action.

The Court agrees with defendants.

The SDWA provides that private parties may commence a civil action against a person or entity alleged to be in violation of the act. 42 U.S.C. § 300j-8(a). This citizen-suit provision, however, is subject to a key limitation known as the "diligent prosecution bar": "No civil action may be commenced . . . if the Administrator [of the EPA], the Attorney General, or the State has commenced and is diligently prosecuting a civil action in a court of the United States to require compliance with" the SDWA. 42 U.S.C. § 300j-8(b)(1)(B).

As noted, plaintiff brings this action seeking to compel the District's compliance with the SDWA and LT2. However, the United States commenced the EPA Action in 2013 and entered

5

into a consent decree with the County in 2015. Among other things, the consent decree provides the United States with injunctive relief that will ultimately result in the District's compliance with LT2.

Plaintiff argues the United States is no longer diligently prosecuting its case against defendants because the EPA Action is closed. Moreover, plaintiff emphasizes that neither he, nor any other resident of Westchester County, participated in the EPA Action, and that a consent decree is essentially a contract that is not entitled to the same preclusive effect as to third parties as an adjudication on the merits.

Plaintiff's arguments are unavailing.

Decisions from other circuits in similar cases support the sensible proposition that if the underlying case was diligently pursued, the diligent prosecution bar applies even though the government has entered into a consent decree with a violator following a civil action. See Grp. Against Smog and Pollution, Inc. v. Shenango Inc., 810 F.3d 116, 128 (3d Cir. 2016) (construing an identical diligent prosecution bar in the Clean Air Act and collecting cases). Moreover, "[t]he focus of the statutory bar to citizen's suits is . . . whether corrective action already taken and diligently pursued by the government seeks to remedy the same violations as duplicative civilian action." N. & S. Rivers Watershed Ass'n v. Town of Scituate, 949 F.2d 552, 556 (1st Cir. 1991).

The circumstances of this case demonstrate ongoing diligent prosecution. The consent decree provides a means to seek court intervention in the event of continuing violations or failure to comply with the consent decree. (Adin Decl. Ex. A ¶¶ 83, 86-88). The consent decree includes a continuing jurisdiction provision providing that the district court "shall retain jurisdiction over [the EPA Action] until termination of this Consent Decree, for the purposes of resolving disputes arising under this Consent Decree, entering orders modifying this Consent

Decree, or effectuating or enforcing compliance with the terms of this Consent Decree." (Id. ¶ 83). Termination of the consent decree requires the parties in the EPA Action to submit a joint stipulation for the court's approval. (Id. ¶ 87). No such stipulation had been filed when plaintiff commenced this action. Moreover, the United States "reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree [and] . . . . further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, within, or posed by, [the District]." (Id. ¶ 11). The consent decree also imposes ongoing monitoring and reporting requirements on the District. (Id. ¶¶ 35-41, 73, 74).

Furthermore, the consent decree includes a provision requiring that it be filed with the court for a period of not less than thirty days for public notice and comment in accordance with 28 C.F.R. § 50.7. (Id. ¶ 89). The United States reserved the right to withdraw or withhold its consent to entry of the consent decree "if the comments regarding the Consent Decree disclose facts or considerations indicating that this Consent Decree is inappropriate, improper, or inadequate." (Id.). An examination of the docket in the EPA Action reveals the proposed consent decree was filed on May 21, 2015 (13 CV 5475 Doc. #56), and was entered by the court more than ninety days later on September 2, 2015 (Id. Doc. #66). Accordingly, plaintiff and other residents of Westchester County had the opportunity to comment on the consent decree and the resolution of the EPA Action.

Because the United States, on behalf of the EPA, commenced and has diligently prosecuted a civil action in the Southern District of New York to require the District's compliance with the SDWA and LT2, which is also the purpose of plaintiff's suit, the diligent

7

prosecution bar set forth in 42 U.S.C. § 300j-8(b)(1)(B) denies plaintiff standing to bring suit under the SDWA.  Accordingly, the SDWA claim must be dismissed.

III.  State Law Claims

Having dismissed the only federal claim in this case, the Court does not have original jurisdiction over plaintiff's state law claims.

"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."  Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009); 28 U.S.C. § 1367(c)(3).

The Court declines to exercise supplemental jurisdiction over the remaining state law claims plaintiff brings here.

**CONCLUSION**

Defendants' motion to dismiss the amended complaint is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #26) and close this case.

Dated: August 2, 2017
       White Plains, NY

                              SO ORDERED:

                              _____
                              Vincent L. Briccetti
                              United States District Judge